1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10    GREGORY PELLERIN,

11              Plaintiffs,                    No. CIV S 12-665 KJM CKD

12        v.

13    NEVADA COUNTY, et al.,                   ORDER

14              Defendants.
      _____/

15

16              This case was on calendar on June 22, 2012 for argument on a motion to dismiss

17    filed by defendants Nevada County, Jesse King, Gregory Weston and Katherine Francis.  Patrick

18    H. Dwyer appeared for plaintiff; Marcos A. Kropf  appeared for defendants.  After considering

19    the parties' briefs, supplemental briefs and argument, the court GRANTS defendants' motion to

20    dismiss in part and declines to exercise supplemental jurisdiction over the state claims.

21    I.  BACKGROUND

22              On March 16, 2012, plaintiff filed a civil rights complaint against defendants

23    Nevada County; Deputy District Attorneys Gregory Weston and Katherine Francis; and Deputy

24    Sheriff Jesse King, containing the following causes of action: (1) violation of Fourth and

25    Fourteenth Amendment rights against Nevada County, stemming from the Sheriff's

26    Department's failure to have a policy for handling and maintaining digital evidence; (2) violation

                                              1

of Fourth and Fourteenth Amendment rights against Nevada County, stemming from the District Attorney's Office's failure to have a policy for handling and maintaining digital evidence; (3) violation of Fourth and Fourteenth Amendment rights against King, stemming from his handling of digital evidence; (4) violation of Fourth and Fourteenth Amendment rights against Francis, stemming from his failure to review and produce exculpatory evidence; (5) violation of Fourth and Fourteenth Amendment rights against Weston, stemming from her failure to review and produce exculpatory evidence; (6) malicious prosecution against Nevada County; (7) a violation of California Civil Code § 52.1(b) against Nevada County and King; (8) intentional infliction of emotional distress against Nevada County and King; and (9) negligence against Nevada County and King.

According to the complaint, on April 20, 2010, process server Thomas Benzing came on to plaintiff's property in violation of a "stay away" order, assaulted plaintiff and placed plaintiff under citizen's arrest.   Complaint, ECF No. 1, ¶ 8.  As Benzing continued to assault plaintiff despite the citizen's arrest, plaintiff put Benzing in an armlock and asked his wife to call the sheriff.  *Id*. ¶ 9.  Plaintiff's wife, Susan Pellerin, filmed "almost the entire incident" on a Flip video camera, which she gave to defendant King, the responding officer.  *Id*. ¶ 10.  Even though Mrs. Pellerin had shown King the video of Benzing attacking plaintiff, King took plaintiff into custody.  *Id.* ¶¶ 10-11.

King plugged the Flip video camera into a USB port on a Sheriff's Department computer and produced an edited version of the video.  *Id*. ¶ 22.  At that time neither the Sheriff's Office nor the District Attorney's Office had policies concerning the handling, viewing, processing, enhancing or examining of digital evidence and had not trained their employees to make forensic copies of such evidence.  *Id*. ¶¶ 15-21.  As a result, King did not make a forensic copy of the digital evidence, but rather produced a clip of the video designed to show plaintiff in a bad light and in the course of making it, erased portions of the video from the Flip camera.  *Id*. ¶ 24.

1      Plaintiff's counsel sent informal discovery requests to Francis, asking for the

2  entire contents of the Flip video camera; Francis finally produced a copy of the edited clip on

3  June 24, 2010.  *Id.* ¶ 25.  Plaintiff secured permission to inspect the video camera and

4  discovered that there was not a single ten-to-fifteen minute recording as Mrs. Pellerin had

5  reported to him, but multiple files, none of which matched the clip Francis had turned over.  *Id.*

6  ¶¶ 27-28.  Plaintiff then secured permission for an expert to undertake a forensic examination of

7  the camera and of any Sheriff's Department computers involved in making the short clip.  *Id.*

8  ¶ 29.  Plaintiff's expert determined it was possible that Mrs. Pellerin's ten-to-fifteen minute

9  video had been altered, as it had been broken into three separate files with unexplained time gaps

10 between them.  *Id.* ¶ 33.

11     Neither Francis nor Weston, who took over the case, explored whether the

12 Sheriff's Department had made a forensic copy of the video or had turned over the entire video

13 to the District Attorney's Office.  *Id.* ¶ 31.  Weston repeatedly refused to review the exculpatory

14 portions of the video.  *Id.* ¶ 35.

15     The Nevada County Superior Court held an evidentiary hearing concerning the

16 handling of the evidence on the Flip video camera.  *Id.* ¶ 36.

17     Plaintiff's counsel also filed a motion to dismiss the charges, alleging that the

18 handling of the digital evidence violated his right to the release of exculpatory evidence under

19 *Brady v. Maryland*, 373 U.S. 83 (1963), and a motion to recuse the District Attorney's Office,

20 based on the District Attorney's conflict of interest.  *Id.* ¶¶ 38-39.  After a hearing, the Superior

21 Court denied both motions.  *Id.* ¶ 40.  Counsel filed a petition for a writ of mandate in the Court

22 of Appeal, which issued an alternative writ granting the request for recusal of the District

23 Attorney's office.  *Id.* ¶ 41.

24     The Attorney General's Office substituted in as the prosecutor and thereafter met

25 with plaintiff's counsel to watch the entire video of the incident with Benzing.  *Id.* ¶¶ 43, 44.  On

26 January 26, 2012, the Attorney General's Office dismissed the case.  *Id.* ¶ 45.

3

## II. STANDARDS FOR A MOTION TO DISMISS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and  accept as true the factual allegations of the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's consideration of documents attached to a complaint or incorporated by reference or matter of

1    judicial notice will not convert a motion to dismiss into a motion for summary judgment.

2    *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*,

3    51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d

4    977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to

5    dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

6    III.  ANALYSIS

7                Defendants argue that to the extent the District Attorney's Office and the

8    individual deputy district attorneys are sued in their official capacities, they are entitled to

9    Eleventh Amendment immunity because they are deemed to be state officials; to the extent they

10   are sued in their individual capacities, they are entitled to absolute prosecutorial immunity.  They

11   also argue that none of the claims against the county, the prosecutors and the Sheriff's

12   Department and deputies are cognizable because they were decided against plaintiff in the

13   criminal proceedings in Nevada County.  They argue that plaintiff cannot raise a *Brady* claim

14   based on his contention that King mishandled the evidence and that the prosecutors ignored the

15   evidence because defendant was not convicted, the evidence was eventually disclosed, and

16   plaintiff was aware of it, but to the extent that the evidence was mishandled, this does not

17   implicate the Fourth Amendment.  They also argue that the complaint does not state a claim

18   against the County because there is no allegation that any malicious prosecution was undertaken

19   pursuant to a policy.  Finally, defendants contend that the pendent state claims should be

20   dismissed.

21                Plaintiff contends there is no Eleventh Amendment immunity because district

22   attorneys are not state officials.  He also argues that the doctrine of absolute prosecutorial

23   immunity is not applicable because the failures in this case were administrative.  He asserts that

24   collateral estoppel does not bar this action because there was no conviction and he was denied the

25   opportunity fully to litigate the issues below.   He then contends that his claims are based on the

26   Fourth and Fourteenth Amendment, not on *Brady*, though they do have a *Brady* component.   In

1   addition, neither the Sheriff's Department nor the County had  policies for maintaining evidence

2   and training deputies about the retention and protection of digital evidence.

3          A. <u>Prosecutors as State Officials</u>

4              Defendants assert Eleventh Amendment immunity for the District Attorney's office

5   and defendants Weston and Francis, to the extent they are sued in their official capacities as

6   deputy district attorneys.  Defendant makes no claim of immunity for either the Sheriff's

7   Department or King as the individually named Sheriff's deputy.

8              In the absence of the state's consent to suit, the Eleventh Amendment bars suits for

9   damages against states, state agencies, and state officials acting in their official capacities.  *See*

10  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 144 (1993);  *Brown*

11  *v. California Dept. of Corrections*, 554 F.3d 747, 752 (9th Cir.2009);  *Han v. United States Dep't*

12  *of Justice*, 45 F.3d 333, 338 (9th Cir.1995).

13             In *Weiner v. San Diego County*, 210 F.3d 1025 (9th Cir. 2000), the Ninth Circuit

14  explored the application of  *McMillian v. Monroe County, Ala*., 520 U.S. 781 (1997) to the

15  question whether a California district attorney was a state or county official for purposes of

16  county liability under *Monell v. Dept. of  Social Servs.*, 436 U.S. 658 (1978).   Recognizing that

17  the question is of one of federal law, but yet was intimately bound up with state law, the court

18  examined California's constitutional and statutory provisions and held that "a California district

19  attorney is a state officer when deciding whether to prosecute an individual." *Id*. at 1031.  The

20  Ninth Circuit has relied on *Weiner* in concluding that prosecutors "act as state officials, and so

21  possess Eleventh Amendment immunity, when acting in [their] prosecutorial capacity."  *Del*

22  *Campo v. Kennedy*, 517 F.3d 1070, 1073 (9th Cir. 2008); *Ambrose v. Coffey*, 696 F. Supp. 2d

23  1119, 1137 (E.D. Cal. 2010).   Defendants Francis and Weston, sued in their official capacity for

24  failing to review the exculpatory evidence on the Flip video camera, are immune from suit.

25             To the extent plaintiff argues that the District Attorney's office itself is liable, his

26  claim also fails, as the office is deemed to be a state agency when involved in prosecutorial

1  activities.  *Nazir v. County of Los Angeles*, No. CV 10-06546 SVW (AGRx), 2011 WL 819081, at

2  *8 (C.D. Cal. Mar. 2, 2011).

3              Finally, the County is also immune.  "To hold a local government liable for an

4  official's conduct, a plaintiff must first establish that the official (1) had final policymaking

5  authority concerning the action alleged to have caused the particular constitutional or statutory

6  violation at issue and (2) was the policymaker for the local governing body for the purposes of the

7  particular act."  *Weiner v. San Diego County*, 210 F.3d at 1028.  Because members of the District

8  Attorney's office were state officials for purposes of prosecutorial decisions, they cannot be

9  deemed to be policy makers for the County.  *Id.* at 1031.

10         B.  <u>Prosecutorial Immunity</u>

11             In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court held that a

12  prosecutor is entitled to absolute immunity for all activities "intimately associated with the

13  judicial phase of the criminal process" even if "the genuinely wronged defendant" is thereby left

14  "without civil redress against a prosecutor whose malicious or dishonest action deprives him of

15  liberty."  *Id.* at 427, 430-31.  As part of his trial preparation, "a prosecutor may be required to

16  obtain, review and evaluate evidence" and so his decision "not to preserve or turn over

17  exculpatory material before trial" in violation of *Brady v. Maryland*, *supra*, is part of the

18  prosecutorial process and subject to absolute immunity.  *Broam v. Bogan*, 320 F.3d 1023, 1029,

19  1030 (9th Cir. 2003).  A prosecutor is also immune from claims that he initiated prosecution

20  maliciously.  *Imbler*, 424 U.S. at 422; *Kalina v. Fletcher*, 522 U.S. 118, 124 (1997).  To the

21  extent plaintiff faults defendants Francis and Weston for refusing or failing to obtain or review

22  the complete video of the incident, they are immune.

23             Plaintiff also argues, however, that the deputy district attorneys and the District

24  Attorney's Office had an affirmative duty to establish and enforce policies for handling,

25  preserving and transmitting digital evidence and that defendants are not absolutely immune for

26  these failures because a prosecutor is not entitled to absolute immunity for actions undertaken in

an investigatory or administrative capacity.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).
In *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009), the Supreme Court considered whether
absolute immunity extended to claims that a prosecutor failed to turn over impeachment material
"due to (1) a failure properly to train prosecutors, (2) a failure properly to supervise prosecutors,
or (3) a failure to establish an information system containing potential impeachment material
about informants," and concluded that "absolute immunity extends to all these claims." *Id*. at 339.
The Court recognized that "the management tasks at issue . . . concern how and when to make
impeachment information available at a trial.  They are thereby directly connected with a
prosecutor's basic trial advocacy duties."  *Id*. at 346.

The Court then turned to the plaintiff's claim that the district attorney's office in
that case should have created a system that would have given prosecutors access to impeachment
material concerning informants.  *Id*. at 348.  The court noted that the decisions concerning the
contents of such a system require knowledge of the law and are therefore connected with the
judicial phase of any prosecution.  *Id*. at 349.  The court concluded that "where a § 1983 plaintiff
claims that a prosecutor's management of a trial-related information system is responsible for a
constitutional error at his or her particular trial, the prosecutor responsible for the system enjoys
absolute immunity just as would the prosecutor who handled the particular trial itself."  *Id*.  In
*Cousins v. Lockyer*, 568 F.3d 1063, 1069 (9th Cir. 2009), the Ninth Circuit relied on *Van de
Kamp,* holding that the Attorney General's office was immune for failing to develop a system to
track information on appellate reversals and thus failing to seek the plaintiff's release in a timely
fashion after a reversal.  Here, the District Attorney's Office and defendants Weston and Francis
are absolutely immune from the claims relating to the failure to implement systems for the
handling of digital evidence.

C. <u>*Brady* Claims</u>

Plaintiff denies that his claims against the County, the Sheriff's Department and
defendant King stem from *Brady v. Maryland*, arguing instead that they stem from the absence of

1  policies for handling digital evidence and King's failures to make a forensic copy of the video and

2  to transmit the complete video to the District Attorney's Office.   However, in his complaint,

3  plaintiff cites "his rights under *Brady v. Maryland*, the loss of his substantive rights under the

4  Fourth Amendment to the United States Constitution, and the loss of his due process rights under

5  the Fourteenth Amendment to the United States Constitution" as sources of rights for his

6  underlying constitutional injuries.  (ECF 1 ¶¶ 43, 52, 60, 70, 76, 83.)

7          "As in any action under § 1983, the first step is to identify the exact contours of the

8  underlying right said to have been violated." *County of Sacramento v. Lewis*, 523 U.S. 833, 842

9  (1998) (citation omitted).  Without an underlying constitutional injury, there is no § 1983 cause of

10 action. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Grossman v. City of

11 Portland*, 33 F.3d 1200, 1203 (9th Cir. 1994) ("*Heller* holds that when a person sues under §

12 1983 for an allegedly unconstitutional arrest the city cannot be held liable absent a constitutional

13 violation by the arresting officer.").  A department policy or regulation that merely has the

14 potential of causing a constitutional injury will not lend itself to a cause of action under § 1983,

15 unless the plaintiff actually suffers such an injury. *See Heller*, 475 U.S. at 799.

16         Plaintiff claims he has an independent constitutional right to proper procedures for

17 handling digital evidence.  He derives this position from *Kyles v. Whitley*, 514 U.S. 419 (1995), a

18 case that explored the contours of the prosecutor's *Brady* duty to turn over exculpatory evidence.

19 However, the portion he cites to does not establish an independent right but only recognizes that a

20 prosecutor may avoid *Brady* problems by establishing adequate procedures:  "procedures and

21 regulations can be established to carry [the prosecutor's] burden and to insure communication of

22 all relevant information on each case to every lawyer who deals with it." *Id.* at 438 (quoting

23 *Giglio v. United States*, 405 U.S. 150, 154 (1972)).  Moreover, "[p]roving that an injury or

24 accident could have been avoided if an employee had had better or more training, sufficient to

25 equip him to avoid the particular injury-causing conduct will not suffice [under § 1983]" and "so

26 showing merely that additional training would have been helpful in making difficult decisions

does not establish municipal liability." *Connick v. Thompson*, ___ U.S. ___, 131 S. Ct. 1350,

1363-64 (2011) (quotations and citations omitted); *see also Devereaux v. Abbey*, 263 F.3d 1070,

1075 (9th Cir 2001) (en banc) (finding no constitutional right to have a witness interview

conducted in a particular way).

In the absence of any independent right to particular procedures, plaintiff can show

a Fourteenth Amendment violation only by demonstrating that his *Brady* rights were violated.

Defendants argue he cannot do so because he was not convicted.

"There is never a real '*Brady* violation' unless the nondisclosure was so serious

that there is a reasonable probability that the suppressed evidence would have produced a

different verdict." *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Schad v. Ryan*,

671 F.3d 708, 715 (9th Cir. 2011), *cert. denied,* __ U.S. __, 133 S.Ct. 432 (2012).  In other words,

*Brady* is violated when "the government's evidentiary suppression undermines confidence in the

outcome of the trial." *Kyles v. Whitley*, 514 U.S. at 434  (citations and quotations omitted).  The

lack of any trial or conviction would make such an inquiry necessarily impossible.

In *Puccetti v. Spencer*, 476 F. App'x 658, 661-62 (9th Cir. 2011), the Ninth

Circuit joined other circuits in concluding that a plaintiff has no claim for a *Brady* violation in the

absence of a criminal conviction.  *See Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir.1999);

*Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir.1998); *McCune v. City of Grand Rapids*, 842 F.2d

903, 907 (6th Cir.1988).  To the extent plaintiff's claims rest on the failure to release exculpatory

information, he cannot state a claim because he was not convicted of any offense.

Plaintiff claims defendants' actions and inactions violated his Fourth Amendment

rights but he has not cited to any case supporting his claim that the mishandling of exculpatory

evidence constitutes such a violation in the absence of a claim that the failure to produce

exculpatory evidence after his arrest unreasonably prolonged his detention or contributed to his

conviction.  *See Russo v. City of Bridgeport*, 479 F.3d 196, 210 (2d Cir. 2007) (holding that

officers who viewed videotape of crime and falsely represented to defendant that it was

1    inculpatory when, in fact, it was exculpatory, could be sued for actively hiding exculpatory

2    evidence resulting in unreasonably prolonged detention in violation of Fourth Amendment);

3    *Taylor v. Waters*, 81 F.3d 429, 437 (4th Cir. 1996) ("[A]lthough open communication between

4    investigators and prosecutors should be encouraged, the failure of an officer to disclose

5    exculpatory evidence after a determination of probable cause has been made by a neutral detached

6    magistrate does not render the continuing pretrial seizure of a criminal suspect unreasonable

7    under the Fourth Amendment.").

8        D.   Manipulation of Evidence Claim

9            Plaintiff alleges that King's actions in downloading editing software, editing the

10   video, and deleting portions of it constitute evidence tampering in violation of his right not to be

11   subjected to charges on the basis of false evidence.  ECF No. 12 at 13-14.

12           In  *Devereaux v. Abbey*, the Ninth Circuit held that "there is a clearly established

13   constitutional due process right not to be subjected to criminal charges on the basis of false

14   evidence that was deliberately fabricated by the government."  263 F.3d at 1074-75.  To plead

15   such a claim, a plaintiff "must, *at a minimum*, point to evidence that supports at least one of the

16   following two propositions: (1) Defendants continued their investigation of [plaintiff] despite the

17   fact that they knew or should have known that he was innocent; or (2) Defendants used

18   investigative techniques that were so coercive and abusive that they knew or should have known

19   that those techniques would yield false information." *Id*. at 1076 (emphasis in original).

20           Plaintiff has not met his burden here of pleading a *Devereaux* claim against

21   defendant King.  He does allege that Mrs. Pellerin showed King the entire video,[1] which allegedly

22   showed that plaintiff acted in self-defense in his assault against Benzing, but that King thereafter

23

24        [1]  At the evidentiary hearing on the motion to dismiss the criminal action, Mrs. Pellerin
     testified she gave the camera to Deputy Rimoldi, who gave it to Deputy King, and that she never
25   saw any officer play it back at the scene.  ECF No. 11-1 at 33.  King testified that Mrs. Pellerin
     showed him some of the video footage at the scene.  ECF No. 11-1 at 29.
26

1 edited the video to exclude any evidence supporting plaintiff's version of the incident.   He does

2 not allege the evidence was false, merely that it was incomplete.

3        Plaintiff has not cited nor has the court found any case supporting his theory that

4 this manipulation satisfies *Devereaux*'s requirement that the police used abusive techniques they

5 knew would yield false evidence.  Moreover, given both the nuanced law of self-defense and the

6 fact that Mrs. Pellerin claimed to have filmed "most of the incident," it does not appear that King

7 proceeded against plaintiff even though he knew plaintiff was innocent.  *See also Leone v.*

8 *Township of Deptford*, 616 F. Supp. 2d 527, 534 (D.N.J. 2009) (concluding there can be no

9 constitutional injury from evidence tampering when the accused is acquitted).  To the extent that

10 the claims against King stem from his mishandling of the digital evidence, plaintiff has not met

11 the minimum standards for pleading a claim under *Devereaux*.

12        E.  Collateral Estoppel

13        Defendants claim that the issues raised in this complaint were decided adversely to

14 plaintiff in connection with a motion to dismiss filed in Nevada County Superior Court.   The

15 parties have asked the court to take judicial notice of a variety of documents from the Nevada

16 County proceedings.  As these are relevant to a determination of this issue, the court grants both

17 requests.  *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (a court may take judicial

18 notice "'of proceedings in other courts, both within and without the federal judicial system, if

19 those proceedings have a direct relation to the matters at issue.'") (quoting *United States ex. rel.*

20 *Robinson Rancheria Citizens Council v. Borneo, Inc*., 971 F.2d 244, 248 (9th Cir.1992)).

21        In California, "collateral estoppel precludes relitigation of issues argued and

22 decided in prior proceedings." *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990). There are

23 /////

24 /////

25 /////

26 /////

1    five requirements that must be met before an issue is collaterally estopped:

2              First, the issue sought to be precluded from relitigation must be
3              identical to that decided in a former proceeding. Second, this issue
               must have been actually litigated in the former proceeding. Third, it
4              must have been necessarily decided in the former proceeding.
               Fourth, the decision in the former proceeding must be final and on
5              the merits. Finally, the party against whom preclusion is sought
               must be the same as, or in privity with, the party to the former
6              proceedings.

7    *Id*. Plaintiff does not allege that privity is lacking, but contends that the instant complaint raises

8    different issues, that the denial of the motion to dismiss did not necessarily decide all the issues in

9    this case, and that the action is not final.

10             Following an evidentiary hearing on the cell phone evidence, plaintiff submitted a

11   brief arguing the evidence had shown that neither the District Attorney's Office nor the Sheriff's

12   Department had a policy to protect digital evidence, that the video clip was intentionally edited to

13   portray Pellerin in an unfavorable light, the video clip produced by the prosecution to the

14   defendant was only one of three video files of the incident, the video was missing two sections,

15   and the District Attorney's Office had violated Pellerin's *Brady* rights.  ECF 11-1 at 9-10.

16             The Superior Court denied the motion to dismiss after an evidentiary hearing and

17   argument on the alleged tampering with the videotape and the *Brady* violation.  It found, based on

18   expert testimony, that law enforcement had not created any gaps on the video; that while Deputy

19   King's handling of the video did not follow best practices, it was not misconduct and not

20   intentional; that the defense had been given access to most of the video and then access to the flip

21   phone with his expert; that whatever was on the video was not necessarily exculpatory because

22   Mrs. Pellerin conceded she did not start filming until after Benzing had initiated the incident; and

23   there was no bad faith or misconduct by the District Attorney's Office.   ECF 19-1 at 41-44.

24    Plaintiff filed a writ of mandate with the Third District Court of Appeal, challenging the Superior

25   Court's ruling.  ECF 1 ¶ 40.  The appeals court declined to review the ruling on the motion to

26   dismiss, but issued a writ recusing the District Attorney.  *Id.* ¶ 41.

1         After the parties' argument in this case, the court requested briefing on two recent

2 California cases involving collateral estoppel, both of which address the preclusive effect of

3 findings in criminal cases on later civil rights actions.  ECF No. 18.  In *Schmidlin v. City of Palo*

4 *Alto*, 157 Cal. App. 4th 728 (2007), plaintiff brought an action against police officers, alleging

5 that they committed various constitutional and common-law torts when they detained and arrested

6 him for public drunkenness.  During the course of the criminal prosecution, plaintiff made a

7 motion to suppress evidence on the grounds that the arresting officer lacked probable cause to

8 conduct an investigatory detention and that all evidence procured from that detention should be

9 excluded.  *Id*. at 736.  That motion was denied and eventually all charges were dismissed.  *Id.*

10 Plaintiff subsequently brought a civil action in California Superior Court, and the jury found that

11 the arresting officers had violated his constitutional rights by using excessive force.  *Id*. at 737.

12 However, the court took from the jury the question of whether officers detained plaintiff without

13 legal cause in violation of his constitutional right to be free of unlawful seizures, concluding that

14 plaintiff had already litigated these issues during his motion to suppress evidence.  *Id*. at 765.  On

15 appeal, the Sixth District Court of Appeal affirmed the trial court's ruling that plaintiff should be

16 estopped from relitigating his unlawful search and seizure claim.  *Id*. at 766.

17         In *Johnston v. County of Sonoma*, C 10-03592 CRB, 2012 WL 381197 (N.D. Cal.

18 Feb. 6, 2012), plaintiff filed suit against the County of Sonoma, its elected Sheriff, and three

19 deputy sheriffs who responded to a 911 call for assistance from plaintiff's neighbor.  Plaintiff was

20 charged with a misdemeanor violation of California Penal Code section 148(a)(1) (resisting

21 arrest).  *Id*. at *1.  During the course of the criminal prosecution, plaintiff filed a motion to

22 dismiss, challenging whether the deputies had probable cause to enter plaintiff's property, to arrest

23 her, and to have her examined by medical personnel at the scene.  *Id*.  The trial court granted a

24 conditional motion to dismiss.  *Id*. at *2.  Plaintiff subsequently filed a civil suit claiming

25 violations of 42 U.S.C. § 1983.  Defendants moved for partial summary judgment on the

26 allegations of forced medical treatment and unlawful seizure and imprisonment, claiming that

1  plaintiff should be barred by collateral estoppel.  Finding that the facts underlying these claims

2  were previously determined by the state court judge, the district court granted defendants' motion.

3  *Id*. at *6-9.

4          With respect to the identity of issues in this case, it appears that the thrust of

5  plaintiff's claims, in his motion to dismiss and in the present action, are based upon alleged

6  mishandling of cell phone footage by the Sheriff's Department and the District Attorney's Office.

7   Both the motion to dismiss and the present complaint detail the failure by the two departments to

8  have policies in place to protect digital evidence, to train employees in handling the evidence, and

9  to adequately communicate about and exchange the cell phone evidence at issue; both also allege

10  that these failures caused the evidence in this case to be mishandled.  *Compare*  ECF 11-1 at 8-42

11  (Memorandum in Support of Motion to Dismiss) *with* ECF 1 (Complaint).

12          Plaintiff argues that the allegations in the present complaint involve many factual

13  and legal issues that were never addressed or resolved by the criminal trial court.  ECF 19.

14  Plaintiff states that the only factual finding made by the trial court during the prosecution was that

15  the video had been made available to him as the defendant in that proceeding, and there was no

16  Brady violation on which to base a dismissal.  *Id*. at 2.  However, as discussed above, the present

17  complaint appears to mirror the motion to dismiss filed by plaintiff during the criminal

18  prosecution.  *See* ECF 11-1; ECF 1.  Plaintiff directs the court to the transcript of the hearing on

19  the motion to dismiss, as evidence of the trial court's limited consideration of the issues contained

20  in the present complaint.  ECF 19 at 2.  However, the transcript shows that both sides argued at

21  length about the handling of the video as well as the failures to make it available to plaintiff.  *See*

22  ECF 19-1 at 29-43.  Because the motion to dismiss included plaintiff's complaints not only about

23  the absence of policies and the *Brady* violation but also about tampering with the evidence, the

24  state court's denial of the motion necessarily decided those issues.

25          With respect to the fourth requirement for applying collateral estoppel, that the

26  former decision was final and based on the merits, the court in *Schmidlin* considered a four part

15

1   test for finality: "(1) whether the decision was not avowedly tentative; (2) whether the parties

2   were fully heard; (3) whether the court supported its decision with a reasoned opinion; and

3   (4) whether the decision was subject to an appeal." *Schmidlin v. City of Palo Alto*, 157 Cal. App.

4   4th at 774 (citing to *Border Business Park v. City of San Diego*, 142 Cal. App. 4th 1538, 1565

5   (2006)).  Plaintiff argues that, unlike the situations in *Schmidlin* and *Johnson*, where appeals of

6   the denials of the motions to suppress were available, the only way to challenge the denial of a

7   motion to dismiss was through appeal following a conviction.  ECF No. 19 at 4.  He concedes that

8   he pursued an extraordinary writ, but argues that it is the absence of the ability to appeal that

9   deprives the order of finality for collateral estoppel purposes.  However, it does not appear that

10  the opportunity for appeal is the gauge of the finality of a decision for preclusion purposes: In

11  *People v. Cooper*, 149 Cal. App. 4th 500 (2007), the court recognized that a "final judgment" for

12  purposes of collateral estoppel is one that is "free from direct attack."  *Id*. at 505-06 (internal

13  citations and quotations marks omitted).  "Stated differently, 'To be "final" for purposes of

14  collateral estoppel, the decision need only be immune, as a practical matter, to reversal or

15  amendment.'"  *Id*. at 521 (quoting *People v. Santamaria*, 8 Cal. 4th 903, 942 (1994)).   The

16  Superior Court's decision in this case is final, as it is "free from direct attack."

17          Accordingly because the issues plaintiff raises in this action were decided

18  adversely to him in the state proceedings, he is barred from pursuing them in this court.

19          F.  State Law Claims

20          Having dismissed all of plaintiff's federal claims, only state law claims remain.

21  Plaintiff brings three causes of action under state law.  (ECF 1 at 24, 26.)  "A federal district court

22  with power to hear state law claims has discretion to keep, or decline to keep, [the state law

23  claims] under the conditions set out in § 1367(c)."  *Acri v. Varian Associates, Inc*., 114 F.3d 999,

24  1000, *as supplemented by* 121 F.3d 714 (9th Cir. 1997).  One such condition is when "the district

25  court has dismissed all claims over which it has original jurisdiction."  28 U.S.C.A. § 1367(c)(3).

26  /////

The court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

IT IS THEREFORE ORDERED that:

1. Defendants' motion to dismiss claims one through six, ECF 9, is granted;

2. The court declines to retain jurisdiction over the state law claims and so dismisses them; and

3. The case is closed.

DATED:  March 27, 2013.

_____
UNITED STATES DISTRICT JUDGE